## LADD *v.* DUDLEY.

The homestead exemption act does not apply to contracts made on the 1st day of January, 1852, but only to those made after that day.

Judgment was recovered on a note dated May, 1853, signed by Dudley and one Robinson. But it appeared that this note was given for two notes previously given by Dudley, one of them directly to the plaintiff and the other to one Palmer, which he endorsed to the plaintiff, and both dated before January 2, 1852. *Held* that the homestead exemption did not apply in this case in favor of Dudley, though it would in favor of Robinson.

When two persons state upon the stand that they have examined a certain record or memorandum, and having refreshed their recollection thereby, are able to swear to a certain date mentioned therein, but disagree in regard to the date, the record or memorandum becomes material to show which is correct.

When a levy of an execution is properly made upon land, and seizure and possession of the land is delivered by the officer to the creditor, and the execution and return are properly recorded, and the time for redemption has expired, the creditor may bring his writ of entry without any further entry upon the land.

Whatever may be the relations between the original parties to an accommodation note, yet when the note is put in circulation in the usual course of business it stands like any other note and takes effect from its date, and the homestead exemption does not apply in favor of the maker of the note, if it was dated prior to January 2, 1852, though it may not have been put in circulation till after that day.

Nor would it make any difference if the purchaser of said note for value knew that it was originally an accommodation note.

THIS was a writ of entry to recover a tract of land in Brentwood.

With the general issue, the defendant filed a brief statement, that the tract of land described in said writ is his family homestead; that on the 8th of October, 1861, being in full possession of said land, with his wife and children, as his homestead, Nath'l K. Leavitt, a deputy sheriff of said county, having an execution recovered by the Granite State Bank against him, April Term, 1861, and being about to levy said execution on the lands of the defendant, embracing the tract described in said writ, said defendant made application to said deputy sheriff, to cause a homestead therein, such as defendant might elect, to be appraised and set off by metes and bounds, not exceeding in value $500, agreeably to the statute, &c., and said deputy sheriff caused said tract described in said writ to be set off and assigned to said defendant as his family homestead in manner and form prescribed by law, and the said defendant, his wife and family, then and ever since have occupied said tract as his family homestead.

The plaintiff offered in evidence a judgment in favor of himself against the defendant and Thomas S. Robinson, recovered April Term, 1861, to wit: on the 27th of April, 1861, for $1012.90 debt, and $17.81 cost. Execution issued May 6, 1861, one of the appraisers was sworn May 25, 1861, and the return is dated of that day. Two pieces of land of Robinson were set off and three pieces of Dudley's land.

The appraisers in their return say, after describing the lands of Dudley, "we appraised the same at the sum of five hundred dollars, and set off the same in part satisfaction of this execution."

The officer's return states the name of one of the appraisers, E. P. Roberson. The certificate of the oath shows, that the appraiser sworn was Eliphalet P. Robinson.

The fees of the officer amounted to $36.33, and include the fees for levying on the lands of both debtors.

The defendant objected, that the return does not show that the execution was levied on any land. It commences "May 25, 1861, I appointed G. W. L. who was sworn," &c.

The return does not show for how much the execution is satisfied. Nor does it show that possession was delivered to the creditor.

The officer had no right to tax his fees for levying on the lands of two debtors in one bill. Each debtor has the right to redeem by paying or tendering the amount due from himself, and no more.

The plaintiff and the officer thereupon presented to the court their petition for leave to amend his return according to the facts, as follows, and moved that the same may be granted:

1. After the words Rockingham, ss. October 14, 1861, insert the following: "By direction of the creditor within named I have extended the within execution upon the five several tracts of land above described in the certificates of the appraisers in manner following, that is to say."

2. By changing the name "Roberson," wherever it occurs in said return to the name "Robinson."

3. By adding at the close of said return the following words, "to wit: for the sum of seven hundred and seventy-three dollars and sixty-seven cents, being the balance of said sum, of eight hundred and ten dollars, after deducting my fees and charges of levying the same, amounting to thirty-six dollars and thirty-three cents."

4. By inserting after the words "I have delivered seizin and possession of said different parcels of land," near the close of said return, the following words, viz: "to the creditor within named."

5. By erasing the fees of the officer as now entered upon said execution, and inserting the following: (Here follow the costs of levying on the lands of each debtor separately, on those of Robinson amounting to $22.46, and on those of Dudley, $13.87.)

The defendant objected to the amendments, because (1) the time of redeeming the land had expired, and it is the debtor's homestead. (2) The defendant's wife and minor children are not notified of the proposed amendment. (3) The sheriff cannot sever the items of his fees and charges and make two separate bills. (4) The fees and charges of the sheriff are illegal and excessive. But leave to amend was granted, sub-

ject to the defendant's exception, and to the opinion of the court at the law term.

The defendant introduced evidence of the facts set forth in his brief statement. The judgment was rendered in favor of the Granite State Bank, against the defendant and Thomas S. Robinson, at the Supreme Judicial Court, April 27, 1861, for $777.02 debt, and $9.41 costs. A set off was commenced, application for a set off of a homestead, and the land described in the writ set off as a homestead. It was admitted Dudley had a wife and children, and that they have been in possession of the land thus set off. And it was contended that land thus set off as a homestead is not liable to be levied upon.

The reply to this defence was, that the plaintiff's debt occurred previous to the second day of January, 1852.

The plaintiff and defendant were both examined, and agreed in their statement, except as to the date of the note of $500 after mentioned. In May, 1847, Ladd hired and advanced to Dudley $350, taking his note for it. In the latter part of January, or first of February, 1852, Mr. Ladd purchased of Dr. Kittredge a note of $500, signed by Dudley, payable to John R. Palmer, or order, and endorsed by him. These notes he kept till May, 1853, about the time when the $350 note would be six years old, when he called on Dudley to renew the note, and Dudley then gave Ladd a new note of that date, for the amount due on both notes, signed by himself and T. S. Robinson. He subsequently paid Ladd $300 on that note, which he said he had received of Palmer. Ladd's judgment was for the balance of this note.

Ladd says " I have no minutes to fix the date of the Palmer note. Cannot tell the exact time I let Kittredge have the money. Dudley told me he had a mortgage from Palmer to secure that note. I have examined the records, and find the date of the mortgage on record to be January 1, 1852. I think the note was probably dated on or before January 1, 1852. In my mind I fix the date by the record. My recollection is refreshed by that."

Mr. Dudley was called for the defendant, and testified that he had not the note he gave to Palmer; he had had it, but was unable to find it. He had searched his house and papers for it. He recollects the note of $350 he gave Ladd, but cannot find it. The Palmer note was given January 2, 1852. A note was given in renewal of both in May, 1853. The note shown is the same date, May 20, 1853, for $913.70 and interest annually, signed by himself and Robinson, and endorsed "August 23, 1854, received 300."

This note was the consideration of that on which Ladd recovered his judgment, dated May 3, 1859, for $902.37, on demand and interest, and on cross examination he testified that he had a mortgage from Palmer to secure $1000, the amount of another note $500, and the note which Ladd had. The former was to Phillips Exeter Academy and of an earlier date. "I can't fix the date, perhaps a year before. The Palmer note was not dated before he had that mortgage. It was given for his accommodation in consideration of this mortgage in part. I looked at the records, not at the deed, which was given up to Palmer. The note

and mortgage were of the same date. The note was not dated before the mortgage; I looked at the records within a week and found the date."

The Register of Deeds produced the book of records, which was objected to by the defendant, and admitted, and the defendant excepted.

It contained the record of a mortgage from Palmer to Dudley, dated January 1, 1852, and recorded January 2, 1852.

The court held that if the note of Dudley to Palmer was dated before the 2d of January 1852, though it was given for Palmer's accommodation, a note and mortgage being given to Dudley in exchange, and though it was not discounted by the plaintiff for Dr. Kittredge for some weeks after, there was no valid homestead as against that debt; that if the note on which the judgment, execution, and levy were founded was made as a renewal of the notes of $300 and $500 it was to be regarded as the same debt, and there was no valid homestead right as against the renewed note, notwithstanding the change of form of the security, one note being given instead of two, the date and amount different, and the last signed by Robinson as surety instead of Palmer's endorsement on one of the old notes; that the levy might be amended in either of the particulars objected to, and being amended, it was a valid levy and made a good title; and that the officer having returned that he had delivered seizin of the property set off, it was not necessary to prove any entry by the plaintiff on the demanded premises; to all which the defendant excepted.

A verdict was taken by consent for the plaintiff, and the questions of law arising in the case were reserved.

*Small*, for defendant.

*Stickney*, for plaintiff.

SARGENT, J. In this case no question is made concerning the validity of the set-off to the defendant, of his homestead in the premises in question upon the execution in favor of the Granite State Bank. This set off would be good as against all debts contracted after the homestead law went into effect. But the plaintiff claims that his debt was contracted prior to the day when the homestead law took effect. And hence that there is no exemption as against his debt.

One of the original notes held by plaintiff is admitted to have been given prior to that time, but question was made as to the date of the other note, the one for $500. The evidence was conflicting as to whether this note was dated January 1, or January 2, 1852. But the verdict being taken by consent for the plaintiff, it is to be assumed, under the instructions given, that the jury found it to have been dated January 1st.

Section 5 of the homestead law, Comp. S. 476, provides that " the provisions of this chapter shall not extend to any judgment rendered on any contract made *before* the first day of January, 1852, or judgment rendered on any note or mortgage executed by the debtor and his wife," &c. Now, if the affirmative provisions of the law had been general without any limitation as to time, and this were the only provision lim-

iting or restricting the operation of the law, there would be no doubt that the homestead exemption would take effect and be in force as against all contracts made on the first day of January, 1852. But this is not the fact. The affirmative provisions of the law, instead of being general, are limited as to time.

Section 1 of the same law provides that "the family homestead of the head of each family shall be exempt from attachment and levy or sale on any execution on any judgment rendered on any cause of action accruing *since* the first day of January, A. D. 1852," &c. There being nothing in the affirmative provisions of the law, which gives it force until *after* the first day of January, there can be nothing in the negative provision as contained in sec. 5, which can make the law effectual on the first day of January. In order to have been perfectly consistent with each other, section 1 should have exempted the family homestead from attachment and levy, or sale, on execution on any judgment rendered on any cause of action accruing *on* or since the first day of January, or if the first section remains as it is, the 5th section should have provided that the law should not extend to any judgment rendered on any contract made *on* or before the first day of January. As the two sections are written the first day of January was left out. But as the affirmative provisions of the law only provide for a homestead as against all contracts made *since* the first day of January, we must of course hold that these provisions do not apply to a contract made *on* that day. The ruling of the court on that point was therefore correct.

The book of records was properly admitted. Both parties testified in relation to the date of the note in question, and both had examined the record to ascertain the date of the mortgage from Palmer to Dudley, which was said to bear the same date of the note in question, and having both thus examined the record in relation to this date and refreshed their recollections thereby, they both testify, but they disagree; one swears that as shown by this record the Palmer mortgage was dated the *first,* and the other that as shown by the same record, it was dated the *second* day of January. They had both undertaken to swear by this record and yet disagreed as to what the record showed, and the record, being thus admitted by both parties to show the true date of the note, became material to show which was right.

The two notes which were the plaintiff's original cause of action were both dated, therefore, before the homestead exemption law took effect. But these notes had been taken up, and a new note given for the amount of both, and instead of Palmer's indorsement on the larger of the original notes, Robinson has signed the new note as surety, still we think it must be regarded as the debt of Dudley, not as a new debt, but the old one, and the same debt as before. That the homestead exemption does not exist in such a case is settled in *Strahan* v. *Foss,* 42 N. H. 43, and cases cited. But it would exist in favor of Robinson, the surety on this note.

Nor does it make any difference that this $500 note was originally, as between Dudley and Palmer, an accommodation note. Palmer had raised the money thereon of Dr. Kittredge by indorsing it himself, and

the plaintiff, within about a month of its date, had purchased the same of said Kittredge. Now, however the fact that this was an accommodation note might have effected the note or a suit upon it as between the original parties, *Story Prom. Notes*, sec. 190, and cases cited, yet when the note passes into other hands for value, it stands like any other note and takes effect from its date. Nor does it make any difference that the purchaser knew that it was originally an accommodation note; it is good in his hands notwithstanding such knowledge. And even though he may have purchased it after it became due with such knowledge, that alone is no defence to the note. *Story's Prom. Notes*, sec. 194. This note would draw interest from its date and the statute of limitations would be a bar in six years from its date, and it would be treated in all respects like any other note of the same date and terms, after it was put in circulation.

We think the amendments to the officer's return were properly allowed. There was sufficient in the original return to amend by, enough to show that all the requirements of the statute had probably been complied with. This would be sufficient to authorize the amendments even where third persons had acquired an interest after the levy, which was not the case here. *Whitten* v. *Varney*, 10 N. H. 291; *Smith* v. *Knight*, 20 N. H. 17. There is no objection on account of the lapse of time in this case. *Avery* v. *Bowman*, 39 N. H. 393. Nor have the wife or children acquired any rights since the levy, nor had they any at the time as against the plaintiff's claim. The only question is as to the right to amend the return as between the original parties, and on that question there is no doubt. Nor can the objection that no entry by plaintiff was proved after the set off, prevail.

The officer delivered seizin and possession of the premises in question to the plaintiff at the time of the set off, as appears by the officer's return, and the plaintiff upon such return, acknowledged that he had received such seizin and possession, and the execution and return are properly recorded, &c., and the statute provides that all such debtor's interest in such real estate shall pass by the levy as against all persons if the proceedings are all regular, and the levy is recorded on or before the return day of the execution. Revised Statutes, ch. 195, secs. 11 and 12; Comp, S. 501. When lands are properly set off, and seizin and possession given to the creditor upon the land, and the whole is perfected by a proper record and return of the execution, this must give the creditor the right, without any thing further done, to bring his writ of entry.

*Judgment on the verdict.*